repealing act divides the article in two,—I think it must have been intended that the proceedings should still continue, but that the offense intended to be proceeded against was to be that defined and limited by the provisions of the section of the Penal Code. We are therefore of the opinion that the defendant, as justice of the peace, had power to try the charge on which the plaintiff was brought before him; and it becomes unnecessary to determine whether, in case he was without jurisdiction over the offense, his error was so far judicial as to give him immunity from suit, under the doctrine of Austin v. Vrooman, 128 N. Y. 229, 28 N. E. 477.

The judgment appealed from should be affirmed, with costs. All concur.

---

(15 App. Div. 351.)

A. T. ALBRO CO. v. UNION DIME SAV. INST. et al.

(Supreme Court, Appellate Division, First Department. March 5, 1897.)

BANKS AND BANKING—TITLE TO DEPOSIT—RIGHT TO DISPUTE.

　　The validity of a judgment subjecting money deposited in a bank to the debts of the depositor's husband, on the ground that the deposit was made in her name to defraud the husband's creditors, cannot be disputed by the bank, where it paid the depositor's checks pending the action, to which it (the bank) was a party, and all the persons claiming an interest in the deposit were parties to the action and acquiesced in the judgment.

　　Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by the A. T. Albro Company against Joseph Fountain, as its judgment debtor; Jean Fountain, his wife; Philip Reynolds, a claimant; and the Union Dime Savings Institution, impleaded,—to have money deposited in that institution in the name of Jean Fountain applied to the satisfaction of the plaintiff's judgment. From a judgment for plaintiff, the Union Dime Savings Institution appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John McG. Goodale, for appellant.
Eugene Frayer, for respondent.

PATTERSON, J. The plaintiffs, judgment creditors qualified to sue, brought this action to reach moneys on deposit with the defendant bank to the credit of Jean Fountain, upon allegations, substantially, to the effect that such moneys were the property of Joseph Fountain, the judgment debtor, and which ought to be applied to the payment of Joseph Fountain's debt. The cause was at issue on the answers of all the defendants, and by that of the bank all the material facts stated in the complaint were denied. It appeared in evidence that the defendant Jean Fountain was a depositor with the defendant bank, and moneys or checks received by her from Joseph Fountain were credited in her account. On the 18th of May, 1895, Joseph Fountain received a check for $750 from one Engle, and it was claimed by the plaintiffs that $650 of the proceeds of that check were

deposited on May 20, 1895, in the defendant bank, in the name of Jean Fountain, and credited in her account; and it was further claimed that such deposit was made in order to secure the same from the pursuit of creditors of Joseph Fountain, and with the intent of disposing of the same to hinder, delay, and defraud creditors. It also appeared in evidence that during the pendency of this action, and before trial, the Union Dime Savings Bank paid over all the balance of moneys on deposit to the credit of Jean Fountain (excepting a few cents), upon her check, to the sheriff of the city and county of New York, to be applied on a judgment recovered by one Perkins against her. The payment thus made by the bank was after full notice to and knowledge by it of the exact claim of the plaintiffs with reference to the true ownership of the money. The bank had such notice, not only through this suit, but independently. It paid the money under the following circumstances: It seems that Perkins had recovered a judgment in the city court against Jean Fountain prior to September, 1895, and that court on the 3d of September, 1895, made an ex parte order, upon the application of Perkins, directing the Union Dime Savings Bank to pay over to the sheriff the money on deposit with it to the credit of Jean Fountain. The Union Dime Savings Bank then made a motion to the city court to set aside that order, and on that motion presented an affidavit of the treasurer of the bank, asking that the order be vacated on the ground that on the 3d of July, 1895, the bank was served with a summons and complaint in this present action, in which complaint it was set forth that Joseph Fountain, being a judgment debtor of these present plaintiffs, had fraudulently sought to escape payment of this judgment by having the sum of $700, equitably belonging to him, deposited in the Union Dime Savings Bank in the name of his wife, Jean Fountain, and for the purpose of delaying and defrauding creditors. The affiant further stated that the bank had interposed an answer in this suit; that it was put in in good faith by the bank, and the bank intended to defend in good faith; that the ownership of the money was disputed by the bank,—and then proceeded to say "that said bank is indifferent as to who is the proper owner of said deposit and lawfully entitled to the same, and said bank only holds said money in order that it may pay over the same to the person lawfully entitled thereto," and that said order directing the payment to Perkins was entered without notice to the bank, and without notice to the plaintiffs in this action; that the bank had been advised by its attorneys that it could not safely make payment under the order of the city court without liability on its part, inasmuch as it had actual or constructive notice of the claims of these plaintiffs and of one Reynolds, another claimant of part of the money. Upon this showing the order of the city court was vacated, notwithstanding which the bank subsequently paid the money to the sheriff as above stated. On the trial of this action the court at special term found that the money on deposit in the Union Dime Savings Bank in the name of Jean Fountain did belong to Joseph Fountain, her husband, and that the same was fraudulently deposited in her account, and that it was applicable to the payment of the plaintiff's judgment, and directed judgment

against the bank for the amount of the balance standing in the name of Jean Fountain, with interest and costs; and from that judgment the bank appeals.

We are to consider and dispose of this appeal precisely as if the bank had not parted with the money, but still retained it; and, so considering it, the attitude in which the bank stands to the litigation is merely that of a disinterested holder of money, obliged to protect the title of its depositor, but having no other right and no other interest in the subject of the action than in subordination to the right of the real owner. The affidavit of the treasurer of the bank, part of the evidence in the case, discloses fully and correctly the relation in which the bank stands to the subject. The contest was really one between the plaintiffs and Jean Fountain. It was incumbent upon the plaintiffs to show facts which would establish their claim that the money was not hers, but her husband's, and any judgment rendered between the plaintiffs and her would be conclusive of the rights of the principal parties, and of the bank's right to retain the money. There was sufficient evidence to justify the conclusion of the court with reference to the real ownership of the money. The record recites that Joseph Fountain and Jean Fountain appeared by counsel on the trial. The answers of these persons are not inserted in the appeal book, but they did appear and answer. They have not appealed from the judgment. One Philip Reynolds, who, it was said, had a claim against the fund, was also a party to the action, and answered and appeared on the trial, but he has not appealed from the judgment, and it also appears in the record that he disclaimed any right to any portion of the fund; so that, as between the plaintiffs and Joseph Fountain and Jean Fountain, the judgment as to the ownership is final and conclusive, and, as to Philip Reynolds, it is also a final adjudication that he has no interest whatever in the fund. It therefore stands adjudged that the moneys in the hands of the bank at the time the action was brought were moneys of Joseph Fountain, and liable to the payment of his debts. If those moneys were still in the hands of the bank, it cannot be disputed that the bank would be fully protected in paying them to the plaintiffs, nor that it would not be heard on appeal to dispute the validity of the judgment, when all of the parties who could claim any interest in the fund acquiesced in the judgment and were conclusively bound by its terms. The situation is in no wise changed by the bank having thoughtlessly and inadvertently paid the money improperly to the wrong party. The whole question of ownership and rights, as between the only persons interested, has been determined to their satisfaction; and if the bank has been the victim of a fraud, as it doubtless has been, it is one that cannot be remedied by an appeal from this judgment, for it is simply through its own fault or negligence that it is placed in its present position.

It is unnecessary to consider the merits of the controversy between the plaintiffs and the other defendants, although, if that were done, we think there is evidence quite sufficient to show, from an analysis of the account, and from the general history of the dealings of the defendant Joseph Fountain with that account, and from the peculiar

testimony of Jean Fountain in her deposition of June 22, 1895, and from her evident false statements respecting the relations of Philip Reynolds to that account, to justify the court below in its finding respecting the question of ownership.

The judgment should be affirmed in so far as it requires the payment by the bank to the plaintiffs of the amount of the balance and interest standing in the name of Jean Fountain, with costs.

VAN BRUNT, P. J., and WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J. I cannot agree with the decision of this case as directed in the opinion of Mr. Justice PATTERSON. By the deposit in the defendant bank by the defendant Jean Fountain, the bank became a debtor of said Jean to the amount deposited. The relation that existed was simply one of debtor and creditor, and the bank was bound to pay to Jean, upon her order, the amount of such indebtedness. The bank, in the discharge of that obligation, has paid, upon a check to Jean Fountain, its depositor, this sum of money due; and unless this plaintiff proves in this action that this sum of money was not due to Jean, or that the plaintiff had a right superior to hers to receive from the defendant bank the amount owing by the bank to Jean, the plaintiff was not entitled to recover. This plaintiff brought this action, asking for a judgment requiring this bank to pay the indebtedness which it owed to Jean to the plaintiff, and it based its right to this judgment upon the fact that, as between the two Fountains and the plaintiff, the plaintiff was entitled to receive from the bank the amount that it owed to Jean; and this was because of the facts that the plaintiff was a judgment creditor of Joseph Fountain, that the money which had been deposited in the bank was the money of Joseph, and that thus the foundation of the indebtedness which existed from the bank to Jean was the money of Joseph, which Joseph had transferred to Jean without consideration. If these facts were true, and if the plaintiff could succeed in tracing directly the money of Joseph into Jean's bank account, so as to show that the foundation of the indebtedness of the bank to Jean was furnished by Joseph, then a court of equity in this action was justified in rendering the judgment that the indebtedness which existed in favor of Jean was applicable to the payment of the debts of Joseph, and that it should be applied to the payment of plaintiff's judgment; but to establish such relief the plaintiff was bound to prove the fact that this money, which was the foundation of this indebtedness, and which was deposited in the bank by Jean, was the money of Joseph, which he had transferred to Jean without consideration. It seems to me that the evidence on the trial was entirely insufficient to prove that fact. It was entirely immaterial for the decision of this case as to how Joseph got the money,—whether he got it by cheating somebody else or not. It was sufficient to show that the money which was the foundation of this deposit was Joseph's money, and not Jean's. There is not, however, the slightest evidence to show that this money deposited in the savings bank by Jean in bills on the 20th of May, 1895, was Joseph's money; and the only evidence upon which it is

attempted to base this finding is that, two days before, Joseph had received a check for $750 for the sale of his property.   On that sale it would appear that Joseph had swindled the purchaser, but there is nothing to connect this check, or the money received under the check, with this $650 which Jean deposited in the bank two days afterwards.   In fact, it is not proved that the check which Joseph received two days before had been cashed at this time.   There is nothing to show that Joseph's money, or the proceeds of the check which he had received, was applied in making up this deposit.   The defendant Jean expressly swears that she did not receive that money from her husband, and, while the court would not be bound to believe her, at the same time, to justify a finding of fact that it was Joseph's money, there must be some evidence of the fact; and the circumstance that there was evidence negativing this fact, which the court was not bound to believe, is not sufficient upon which to base a finding of the affirmative of the fact.   There was evidence that at some prior time two checks for collection had been deposited by Jean in this bank, which were drawn by her husband; but there was nothing to show that these checks were not the property of Jean, and nothing to show that when these checks were deposited by Jean she was not the owner of the money represented by them.   It further appears that all of this deposit based upon these checks, with the exception of a small sum, had been drawn out of the bank by Jean before the commencement of this action.   There is nothing in all this testimony, except the mere suspicion that because these parties were husband and wife the money which Jean received was the money of her husband; and, as a married woman now has a right to her property free from any control of her husband or his creditors, it seems to me that, before the court can apply the property of a married woman to the payment of her husband's debts, there must be some evidence to show that the money or property in the possession of the wife is or has been the money or property of the husband, and not base such action upon a mere suspicion which arises out of the relation that exists between the parties.   The fact that the bank paid the check of Jean drawn on it to the sheriff to satisfy a judgment against Jean would not impose upon the bank any liability in case the money on deposit was due to Jean.   Unless that money belonged to the judgment debtor, or unless, as between the judgment debtor and his creditors, the debt due by the bank, in equity, should be paid, not to Jean, but to Joseph's creditors, then the bank was bound to pay the check, and would have been liable to Jean for a refusal.   By the payment the bank simply took the responsibility of defending the action on its own behalf, and not on behalf of its depositor, whose check it had honored.   I think the judgment should be reversed and the complaint dismissed.